Tagged Opinion



**ORDERED in the Southern District of Florida on March 05, 2008.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court
_____

```
              UNITED STATES BANKRUPTCY COURT
               SOUTHERN DISTRICT OF FLORIDA
                 WEST PALM BEACH DIVISION


In re:                         CASE NO.:06-14204-BKC-PGH

LAWRENCE KENT CLARKSTON,        Chapter 7

     Debtor.
_____/

MICHAEL BAKST, TRUSTEE,         ADV. NO.:07-1118-BKC-PGH-A

     Plaintiff,

v.

CONNIE S. CLARKSTON,

     Defendant.
_____/
```

### MEMORANDUM OPINION

**THIS MATTER** came before the Court for trial on December 18, 2007, upon Plaintiff, Michael R. Bakst's, trustee in bankruptcy

for Lawrence Kent Clarkston, *Complaint to Determine Validity, Priority, and Amount of Interest in Property and for Declaratory Judgment Pursuant to Bankruptcy Rules 7001(2) and 7001(9) or, in the Alternative, Complaint to Avoid and Recover Fraudulent and/or Preferential Transfers Pursuant to 11 U.S.C. § 548 and § 39-23, North Carolina Statutes and to Recover Estate Property Pursuant to 11 U.S.C. § 550.* The Court having heard the testimony of witnesses, having considered the documentary evidence, the candor and demeanor of the witnesses, and having been otherwise fully advised in the premises, hereby sets forth its findings of fact and conclusions of law.

## **FINDINGS OF FACT**

On or about January 15, 2002, Lawrence Kent Clarkston (the "Debtor") and Connie S. Clarkston (the "Defendant") purchased, as tenants by the entirety, a parcel of real property located in North Carolina, more precisely described as:

> That certain tract of land containing 5.44 acres, more or less, and being bounded, now or formerly, by natural boundaries and/or lands owned by and/or in the possession of persons as follows: on the North by N.C. Secondary Road #1150, and on the East and South by the Young Heirs and the West by Raper

(the "Real Property"), from Charles Raper, who took back a mortgage on the Real Property.

The Debtor and the Defendant subsequently divorced and on September 23, 2003, the Circuit Court in and for St. Lucie

County, Florida entered a Final Judgment of Dissolution of Marriage (the "Dissolution Order"). The Dissolution Order incorporated a Marital Settlement Agreement, signed by both the Debtor and the Defendant, in which the Defendant agreed to transfer all right, title, and interest she had in the Real Property to the Debtor. The Debtor eventually moved back in with the Defendant sometime in 2004 and they subsequently remarried in April, 2007.

On or about August 30, 2005, the Debtor conveyed the Real Property back to the Defendant by general warranty deed. However, there was no contract of sale or other written agreement documenting the terms of the conveyance. The Debtor testified that he was behind on the mortgage payments and that if the mortgage was not paid off, he would have lost the property at foreclosure. The Debtor agreed to transfer the Real Property to the Defendant if she would pay off the mortgage in the amount of $13,800.00. The Defendant testified she made a payment of $5,000.00 on March 7, 2005, and a payment of $8,800.00 on August 24, 2005, to Raper on the Debtor's behalf to pay off the mortgage. In addition, the Defendant testified that she did not give the Debtor any other consideration for the transfer. Moreover, the evidence presented at trial did not establish that there was any agreement at the time of the transfer that the Defendant would make future payments to the Debtor, and the

3

Defendant testified that there was no such written agreement. The Debtor's liabilities at the time of the transfer included approximately $97,000.00 owed to Macomb County, Michigan for unpaid child support, and the Debtor's only significant asset was the Real Property. Therefore, the Debtor was insolvent as a result of the transfer.

On November 1, 2005, the Defendant transferred the Real Property back to Charles Raper for $44,712.41, and agreed to divide the proceeds in half with the Debtor. However, the Debtor requested that he not be given his share of the proceeds in one lump sum. Therefore, the Defendant agreed to hold the proceeds from the sale in her own personal account and to disburse them to the Debtor as he requested. The Defendant and Debtor testified that the Defendant made subsequent payments to the Debtor in the amount of $20,200.00 from August 16, 2005 until May 9, 2006 in accordance with their oral agreement.[1] The Defendant presented copies of cancelled checks representing the payments up to and including the payment made on February 23, 2006. Although no checks were introduced evidencing payments made after February 23, 2006, the Trustee did not present any evidence to dispute the Defendant's or Debtor's testimony that the Debtor received

---

[1] The summary of payments presented by the Defendant at trial lists the date, amount, and check number for each payment from August 16, 2005 to May 9, 2006. The stated total on the summary is $20,230.00. However, the actual total of the listed payments is only $19,930.00.

approximately $20,000.00 from the Defendant for his share of proceeds from the Real Property. The Defendant and the Debtor each testified that all of these checks were given to the Debtor for his share of the proceeds from the sale of the Real Property.

The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on August 31, 2006 (the "Petition Date"). The Trustee now seeks to recover from the Defendant $30,912.41, which represents the proceeds from the sale of the Real Property to Charles Raper, after giving credit to the Defendant for the $13,800.00 that the she paid to satisfy the mortgage.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (H).

**A.   *The Transfer of the Real Property to the Defendant is Avoidable Under § 548(a)(1) and North Carolina General Statute §§ 39-23.4 and 39-23.5.***

The Trustee seeks to avoid the August 30, 2005 transfer from the Debtor to the Defendant. The Trustee alleges that the transfer was fraudulent under §§ 548(a)(1) of the Bankruptcy Code and under North Carolina General Statute §§ 39-23.4(a) and 39-23.5(a).

Section 548(a)(1) of the Bankruptcy Code provides that:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

5

>     (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
>     (B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
>         (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; [or]
>
>     . . .
>
>         (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).

The Trustee first argues that the transfer was made with the actual intent to hinder, delay, or defraud creditors under § 548(a)(1)(A). Because a debtor is not likely to testify that he had the requisite intent to defraud creditors, the intent to hinder, delay, or defraud can be inferred from extrinsic evidence and the presence of badges of fraud. *See In re Lordy*, 214 B.R. 650, 664 (Bankr. S.D. Fla. 1997); *In re Warner*, 87 B.R. 199, 202 (Bankr. M.D. Fla. 1988). Badges of fraud include: (1) a relationship between the debtor and the transferee; (2) lack of consideration for the conveyance; (3) insolvency or indebtedness of the debtor; (4) the transfer of the debtor's entire estate; (5) reservation of benefits, control or dominion by the debtor; (6) secrecy or concealment of the transaction; and (7) pendency or threat of

6

litigation at the time of the transfer. *See Warner*, 87 B.R. at 202. While a single badge of fraud may simply raise suspicion, the presence of several badges of fraud, when considered together, may form the basis for a finding of actual fraud. *Id.* at 203. Taking into consideration the badges of fraud enumerated in *Warner*, the Court concludes that the Debtor transferred the Real Property to the Defendant with the actual intent to hinder, delay, or defraud creditors.

First, the Debtor was living with the Defendant, his then ex-wife, at the time of the transfer. Also, at the time of the transfer the Debtor only received consideration in the amount of $13,800.00 for the payoff of the mortgage. However, the Defendant sold the property approximately two months later for $44,712.41, significantly more than the Debtor received at the time of the transfer. Moreover, the Debtor does not dispute that the Real Property was his only significant asset or that he was insolvent at the time he transferred the Real Property to the Defendant. The evidence presented at trial shows that the Debtor's liabilities at that time included approximately $97,000.00 owed to Macomb County, Michigan for unpaid child support, and that the State of Michigan was garnishing the Debtor's wages and social security. After evaluating the presence of these badges of fraud, the Court concludes that the Debtor transferred the Real Property to the Defendant with the actual intent to hinder, delay, or defraud his

creditors. Therefore, the transfer is avoidable under § 548(a)(1)(A).

The Trustee also seeks to avoid the transfer of the Real Property under § 548(a)(1)(B). In order to avoid a transfer under § 548(a)(1)(B), the Trustee must show that (i) there was a transfer of an interest of the Debtor in property, (ii) the transfer occurred within two years preceding the Petition Date, (iii) the Debtor received less than reasonably equivalent value in exchange for the transfer, and (iv) the Debtor was either insolvent on the date of the transfer or became insolvent as a result of the transfer. *Grant v. Davis (In re Damason Constr. Corp.)*, 101 B.R. 775, 777 (Bankr. M.D. Fla. 1989)(*citing In re Ear, Nose and Throat Surgeons of Worcester*, 49 B.R. 316 (Bankr. D. Mass. 1985)). The parties do not dispute that there was a transfer of the Debtor's interest in the Real Property, or that the transfer occurred on August 30, 2005, within two years of the Petition Date.

The Court finds that the Debtor received less than reasonably equivalent value in exchange for the transfer. The determination of reasonably equivalent value should be made on a case by case basis. *Damason Constr. Corp.*, 101 B.R. at 777. Consideration paid after the transfer should not be considered in determining reasonable equivalent value unless it was part of the original agreement. *See In re Pajaro Dunes Rental Agency, Inc.*, 174 B.R. 557, 578 (Bankr. N.D. Cal. 1994). The Defendant paid off the

mortgage on the Real Property in the amount of $13,800.00 prior to the transfer. Although the evidence shows that the Debtor received $19,930.00 from the Defendant in the year after the transfer, because there was no evidence that these payments were a part of an agreement at the time the Debtor transferred the Real Property to the Defendant, the Court cannot consider those payments for purposes of determining reasonably equivalent value. The Debtor and Defendant did not have any such agreement until the time that the Defendant subsequently sold the Real Property to Charles Raper. The Court finds that the value of the property was $44,712.41 based on the subsequent resale value only two months after the transfer to the Defendant. Therefore, the Court finds that the consideration received by the Debtor in the amount of $13,800.00 was not reasonably equivalent value.

Finally, the Court finds that the Debtor was insolvent at the time of the transfer. The Debtor owed approximately $97,000.00 in child support to the State of Michigan and his only significant asset was the Real Property. Even if the Debtor was not insolvent immediately before the transfer, the transfer would have rendered him insolvent. "Where a debtor is shown to be insolvent at a date subsequent to a particular transfer and the debtor's condition did not change during the interim period, it is logical and permissible to presume that the debtor was insolvent at the time of the transfer." *Damason Constr. Corp.*, 101 B.R. at 778. As in *Damason*,

the Debtor's schedules reflect that the Debtor's liabilities far exceed his assets and the Statement of Financial Affairs does not indicate that there were any significant transfers in the prior year or that there were any other significant changes in the Debtor's financial condition. Accordingly, it is appropriate to presume that the Debtor was insolvent after he conveyed the Real Property to the Defendant.

The Court finds that there was a transfer of an interest of the Debtor in property made within two years of the Petition Date in which the Debtor received less than reasonably equivalent value in exchange for the transfer, which was made while the Debtor was insolvent. Therefore, the transfer of the Real Property from the Debtor to the Defendant is avoidable under § 548(a)(1)(B).

B.  ***The Transfer of the Real Property to the Defendant is Avoidable Under The North Carolina Uniform Fraudulent Transfer Act and § 544(b) of the Bankruptcy Code.***

The Trustee also seeks a finding that the transfer was fraudulent under the North Carolina Uniform Fraudulent Transfer Act. Section 39-23.4(a) of the North Carolina General Statutes provides that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (1) With the intent to hinder, delay, or defraud any creditor of the debtor; or

>      (2) Without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>           ...
>
>      b. Intended to incur or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

N.C. Gen. Stat. § 39-23.4(a) (2007).

North Carolina General Statutes § 39-23.4(b) provides a non-exhaustive list of badges of fraud to be considered in determining intent under subsection (a)(1). These factors include whether: the transfer was to an insider; the debtor retained possession or control of the property transferred after the transfer; the transfer or obligation was disclosed or concealed, before the transfer was made or obligation was incurred; the debtor has been sued or threatened with suit; the transfer was of substantially all the debtor's assets; the debtor absconded; the debtor removed or concealed assets; the value of the consideration received by the debtor was not reasonably equivalent to the value of the assets transferred; the debtor was insolvent or became insolvent shortly after the transfer was made; and the transfer occurred shortly before or shortly after a substantial debt was incurred. *See* N.C. Gen. Stat. § 39-23.4(b) (2007).

As discussed previously, many of these indicia of fraud are present in this case. The transfer was between the Debtor and his then ex-wife with whom he was living; the State of Michigan was attempting to collect approximately $97,000.00 in unpaid child

11

support; the transfer was of the Debtor's only significant asset; the consideration received by the Debtor was less than reasonably equivalent value; and the Debtor, if he was not already insolvent prior to transferring the Real Property, became insolvent as a result of the transfer. Therefore, the Court finds that the transfer was fraudulent under North Carolina General Statutes § 39-23.4(a)(1).

The Court also finds that the transfer was fraudulent under North Carolina General Statutes § 39-23.4(a)(2). The Debtor did not receive reasonably equivalent value in exchange for the transfer, and the Debtor intended to incur or believed that he would incur debts beyond his ability to pay as they became due. By transferring the Real Property, his only significant asset, to the Defendant, for less than reasonably equivalent value, the Debtor failed "to retain property fully sufficient to pay his creditors then existing." *See United States v. Greer*, 383 F. Supp. 2d 861, 865 (W.D.N.C. 2005)(*citing Aman v. Walker*, 81 S.E. 162, 164 (N.C. 1914)). Therefore, the Court finds that the transfer was fraudulent and void under section 39-23.4(a)(2) of the North Carolina General Statutes.

Finally, the Trustee seeks a finding that the transfer was fraudulent under North Carolina General Statutes § 39-23.5(a). That section provides that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the

12

> transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

N.C. Gen. Stat. § 39-23.5(a)(2007).

As previously discussed, the Debtor did not receive reasonably equivalent value in exchange for the property, and as a result of the transfer he became insolvent. Therefore, the transfer is fraudulent under section 39-23.5(a).

Section 544(b)(1) of the Bankruptcy Code allows the Trustee to avoid a transfer that is voidable under applicable state law. Section 544(b)(1) provides that:

> . . . [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . .

11 U.S.C. § 544(b)(1).

Therefore, because the transfer is void under the North Carolina Uniform Fraudulent Transfer Act as discussed, it is avoidable by the Trustee under § 544(b)(1) of the Bankruptcy Code.

**C.   The Trustee May Recover From the Defendant Under § 550(a) Proceeds From the Sale of the Real Property.**

The Trustee seeks to recover from the Defendant the proceeds of the sale of the Real Property to Charles Raper, after giving credit to the Defendant for the mortgage lien paid off by the Defendant prior to the transfer. However, the Trustee asserts that

the Defendant should not receive credit for any payments that she made to the Debtor after the transfer and before the bankruptcy petition. Section 550(a) of the Bankruptcy Code provides that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. 550(a).

"[W]hen recovery of the property is impractical, the Trustee may recover the proceeds of the sale of the property to a third party." *A & S Sales & Leasing, Inc. v. Belize Airways Ltd. (In re Belize Airways Ltd.)*, 7 B.R. 601, 603 (Bankr. S.D. Fla. 1980). However, avoidance does not automatically lead to recovery. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). This Court has previously recognized that § 550(d)'s single satisfaction principle applies to prohibit a trustee from recovering under § 550(a) "from a transferee that has already returned to the estate that which was taken in violation of the Code." *Bakst v. Wetzel (In re Kingsley)*, 2007 WL 1491188, at *3 (Bankr. S.D. Fla. May 17, 2007), *aff'd sub nom. Kingsley v. Wetzel*, No. 07-13488, 2008 WL 539926 (11th Cir. Feb. 29, 2008). *See also Dobin v. Presidential Fin. Corp. Of Del. Valley, (In re Cybridge Corp.)*, 312 B.R. 262,

271 (D.N.J. 2004).

As previously discussed, the Court finds that the transfer is avoidable pursuant to §§ 548 and 544. Therefore, under § 550(a), the Trustee is entitled to recover from the Defendant, the initial transferee, the proceeds from the sale of the Real Property. The Trustee does not dispute that the Defendant is entitled to a credit of $13,800.00 for any alleged fraudulent conveyance to the Defendant, but he disputes that she is entitled to credit for any payments made after the transfer. However, for the reasons state below the Court finds that the Defendant should be credited for prepetition, post-transfer payments that she made to the Debtor from August 16, 2005 to May 9, 2006.

While the Court cannot consider the post-transfer payments in determining whether the transfer was avoidable under §§ 548 or 544, "to the extent that the fraudulent transfer is repaid prepetition, the claim is satisfied." *Kingsley*, 2007 WL 1491188, at *4. The Defendant stated that she made these payments to the Debtor for his share of the proceeds from the subsequent sale of the Real Property. Moreover, the Debtor testified that he understood the payments to be in consideration for the Real Property. The fact that the Defendant made these payments to the Debtor does not affect the fraudulent characterization of the transfer, or the Trustee's ability to *avoid* the transfer. However, it does affect the Trustee's ability to recover amounts from the Defendant as the

initial transferee. If the Trustee was permitted to recover these payments from the Defendant, the estate would essentially recover the payments twice and receive a windfall. Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. 105(a). Moreover, section 550(d) "is designed to restore the estate to the financial condition that would have existed had the transfer never occurred." *In re Sawran*, 359 B.R. 348, 354 (Bankr. S.D. Fla.); *see also In re Centennial Textiles, Inc.*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998). It would be inequitable to allow the Trustee to recover payments made by the Defendant to the Debtor simply because they were made after the transfer. Crediting the Defendant for payments made to the Debtor between the date of transfer and the Petition Date will restore the estate to the financial condition that would have existed had the transfer never occurred. Therefore, after crediting the Defendant for the mortgage payment and the post-transfer payments, the Trustee may recover $10,982.41 from the Defendant.

## CONCLUSION

Based on the foregoing, the Court concludes that the Debtor's transfer of the Real Property to the Defendant on August 30, 2005, was fraudulent under §§ 548(a)(1)(A) and (B) of the Bankruptcy Code and under North Carolina General Statutes §§ 39-

23.4(a) and 39-23.5(a). Therefore, the Trustee may avoid the transfer under § 544(b) and recover from the Defendant under § 550(a) the value of the Real Property after giving credit for the mortgage payment and post-transfer payments made to the Debtor by the Defendant.

### ORDER

The Court having heard the testimony of witnesses, having considered the documentary evidence, the candor and demeanor of the witnesses, and having been otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1) Judgment is awarded in favor of the Plaintiff.

2) The Trustee may avoid the August 30, 2005 transfer of the Real Property from the Debtor to the Defendant under 11 U.S.C. §§ 548 and 544(b).

3) The Trustee is entitled to recover from the Defendant under 11 U.S.C. § 544(a) the amount of $10,982.41, after crediting the Defendant for the mortgage payment and the post-transfer payments made to the Debtor by the Defendant.

4. Pursuant to Federal Rule of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies Furnished To:

Michael R. Bakst, Esq.

Heather Ries, Esq.

Connie S Clarkston

```
1858 SW Day St.
Port St. Lucie, FL 34953
```

John F Longley, Esq

AUST